REDMANN, Judge.
Defendant appeals from a judgment ordering him to deliver to plaintiff all proper *464 ty of the International Films partnership and to cease acting as general partner. We affirm.
As the trial judge went directly to the heart of this matter, so do we. Article II of the Settlement Agreement, by which Weinberg became general partner and sole manager of the partnership’s property, provides that
his [admitted] failure to comply with the minimum schedule of receipts shall automatically give the original General Partner the option to terminate his appointment as General Partner of International Films immediately, upon receipt of notice from Abraxas Film Corporation that it desires to have the General Partnership revert to it .
Weinberg attacks the settlement agreement for its lack of limited partners as signatories: but he may not both claim the advantages and reject the disadvantages of that agreement. The same reasoning defeats Weinberg’s argument that Abraxas’s and Smith’s resignations as part of the settlement terminated the partnership: that is simply not the bargain set forth in the settlement agreement, and there never was a quitting of the partnership.
Similarly Weinberg’s procedural arguments — e. g., that the partnership is an indispensable party — must be answered. The bargain quite explicitly was that on notice from Abraxas, Weinberg was to deliver, to any place Abraxas designated, every “item, the property of International Films, and shall cease and desist to act on behalf of International Films in any capacity whatsoever . . . .”
Finally, Weinberg argues that this is not a case for injunction, that is, for specific performance of the settlement agreement. We disagree. First, La.C.C. 1757 declares that a contract gives “the right of enforcing /ts performance by law” (emphasis added), and C.C. 1799 states the Louisiana “presumption of law that in every contract each party has agreed to confer on the other the right of judicially enforcing the performance of the agreement . . . ” (emphasis added). Even when a contract provides a penalty (as does this one), C.C. 2124 (titled “Specific performance in lieu of penalty”) provides that “The creditor, instead of exacting the penalty stipulated from the debt- or who is in default, may sue for the execution of the principal obligation.” Even if this were an obligation to do, rather than one to give or deliver, C.C. 1926 entitles the obligee “either to damages, or, in cases which permit it, to a specific performance of the contract, at his option . . . .” C.C. 1927 provides for damages in “ordinary cases, . . . but where this would be an inadequate compensation, and the party [obligor] has the power of performing the contract, he may be constrained to a specific performance . . . .” For further discussion of the Code provisions, see Comment, 1966, 40 Tul.L.Rev. 340.
Plaintiff’s right to specific performance is clearly established by law.
Affirmed.